**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Cebrynski, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Wells Fargo Bank NA, et al.,<br><br>    Defendants. | No. CV-21-01965-PHX-DJH<br><br>**ORDER** |

Plaintiffs Mark and Kristen Cebrynski ("Plaintiffs") have filed a Motion to Exclude Portions of Opinion Testimony by John Ulzheimer (Experian's Expert) as outside the Scope of Rule 702 and *Daubert*. (Doc. 107). The matter is fully briefed. (Docs. 117, 119). For the following reasons, the Court denies Plaintiffs' Motion.

**I.    Background[1]**

This case stems from Experian's reporting of an initiated foreclosure which was interpreted as a completed foreclosure when Plaintiffs tried to refinance their home. (Doc. 122 at 2). Experian has retained Mr. John Ulzheimer ("Mr. Ulzheimer") to testify as an expert witness on its behalf at trial. (Doc. 107-1 at 4). Mr. Ulzheimer was retained by Experian "to provide expert opinions on credit reporting, credit scoring, Plaintiffs' damage allegations, and to provide rebuttal opinions, as necessary." (*Id*.) Mr. Ulzheimer summarizes his opinions as follows:

(1) Plaintiffs' Wells Fargo mortgage loan was, in fact, subject to foreclosure

---
[1] The facts are fully set forth in the Court's Order Denying Summary Judgment (Doc. 122 at 2) and only the facts relevant to this Order are discussed here.

proceedings that had started, and was reported to Experian as such. Experian used the same coding to indicate "foreclosure proceeding started" on Plaintiffs' Wells Fargo mortgage loan as Experian has been using for at least the last 25 years. The grid code "8" number that Experian uses to indicate a "foreclosure started" is the same grid code that Experian uses for a completed foreclosure. It is not uncommon for the same grid code to reflect different events.

(2) According to Fannie Mae's historical Selling Guides, Fannie Mae has long been aware that Experian uses "8" to code for a completed foreclosure since at least since July 2011. Fannie Mae's system does not distinguish between a MOP 8[2] used for a foreclosure started and a MOP 8 used for a completed foreclosure. Since at least July 2014, Fannie Mae has also provided a solution for lenders to instruct Fannie Mae's Desktop Underwriter to "disregard the foreclosure information on the credit report in the eligibility assessment" if the foreclosure information is incorrect.

Here, Fannie Mae's system identified the Plaintiffs' "foreclosure started" as a completed foreclosure even though Experian never included any reference on Plaintiffs' Experian credit report at any point in time to "completed foreclosure" or "foreclosed." It should have been clear to any human being reading Experian's reporting that the foreclosure was never completed because the historical payment history grid went from "foreclosure started" to "current" in one month's time, which clearly indicates the Plaintiffs caught up on payments between those two months. The historical payment history grid also showed two years of payment history subsequent to "foreclosure started," indicating that Plaintiffs were continuing to make payments (albeit sometimes their payments were untimely).

Thus, the foreclosure was plainly never completed and no competent review of Experian's credit reporting by an underwriter, for example, could ever be interpreted as a completed foreclosure. I would not expect a competent underwriter to make a determination based on a single code in the historical payment history grid, while ignoring other information regarding an account. Nevertheless, there is no evidence Plaintiffs' mortgage broker made any effort to work with potential lenders that attempted to instruct Fannie Mae's Desktop Underwriter to disregard grid code/MOP code 8 on Plaintiffs' Experian credit report, despite the existence of the years-old workaround.

(3) Plaintiffs' experts have proffered a number of opinions that are factually inaccurate, or are contradicted by the documents produced in this case.

(Doc. 107-1 at 5–6).  Plaintiff now seeks to exclude Mr. Ulzheimer's opinions related to

---

[2] Mr. Ulzheimer defines the term "MOP" as "Manner of Payment."  (Doc. 107-1 at 18).

mortgage underwriting. (Doc. 107 at 2).

**II.    Discussion**

Plaintiffs argue that (1) Mr. Ulzheimer is not qualified to proffer affirmative opinions as to how a reasonable mortgage underwriter would or should have interpreted Experian's inaccurate reporting; and (2) Mr. Ulzheimer is not qualified to proffer opinions to rebut plaintiff's mortgage underwriting expert, Mr. John Thompson. (Doc. 107 at 3, 9). These arguments go to Mr. Ulzheimer's second and third opinions stated in his report. The Court will concurrently address each of these arguments below.

**A.    Legal Standard**

Rule 702 of the Federal Rules of Evidence tasks the trial court with a special "gatekeeping" obligation to ensure that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 589 (1999). A qualified expert may testify based on their "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence." Fed. R. Evid. 702(a). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id*. The expert's testimony must also be based on "sufficient facts or data," be the "product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." *Id*. at 702(b)–(d).

*Daubert*'s general holding applies to an expert's testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). *Daubert* suggests a number of factors for courts to consider in discharging its gatekeeping obligation; however, these factors do not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to a police officer's testimony based on twenty-one years of experience working undercover with gangs). Furthermore, "[t]he inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the

conclusions that they generate." *Id*.  The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and that the proposed testimony is admissible under Rule 702.  *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

That the opinion testimony aids, rather than confuses, the trier of fact goes primarily to relevance.  *See Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 2nd, 1156, 1161 (D. Ariz. 2014) (citing *Primiono v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).  Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.  However, an expert witness, "cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (internal citations omitted); *see also* Fed. R. Evid. 704.

**B.  Mr. Ulzheimer is Qualified to Testify as an Expert Witness Under Federal Rule of Evidence 702 and *Daubert***

Plaintiffs argue that Mr. Ulzheimer is unqualified to opine on how a reasonable underwriter would or should have interpreted Experian's reporting as his relevant experience is in the credit reporting industry—not mortgage underwriting specifically. (Doc. 107 at 5).  Plaintiffs also note that Mr. Ulzheimer testified during his deposition that he has never testified as a mortgage lending expert.  (*Id*. at 7).  Plaintiffs therefore seek to limit Mr. Ulzheimer's testimony to areas related to credit reporting and argue that the Court should prohibit Mr. Ulzheimer from testifying about what a mortgage underwriter would or should do as beyond the scope of Rule 702.  (*Id*. at 9).

Experian, on the other hand, argues that Mr. Ulzheimer is "undoubtedly qualified" to opine on underwriting practices as he has had over thirty years of experience in the credit reporting industry; specifically, he spent six years at Equifax where he developed a first-hand understanding of how credit files are compiled, stored, retrieved, and delivered. (Doc. 117 at 4).  Mr. Ulzheimer states that he is "well-versed regarding how credit reports are used by lenders for marketing, underwriting, and collection practices." (Doc. 107-1 at 2).  However, Experian concedes that "Mr. Ulzheimer is not put out as and does not purport

to be a mortgage underwriting expert." (Doc. 117 at 7). Experian avers that this is not fatal to the admissibility of Mr. Ulzheimer's testimony as he is not required to be a "specialist" in mortgage underwriting to testify about how information on a credit report might be interpreted by a lender or mortgage underwriter. (*Id*. at 6 (citing *Doe v. Cutter Biological, Inc*., 971 F.2d 375, 385 (9th Cir. 1992)).

Indeed, Rule 702 does not require an expert to be a "specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor." *Doe v. Cutter Biological, Inc., a Div. of Miles Lab'ys, Inc*., 971 F.2d 375, 385 (9th Cir. 1992). So long as the proponent of the evidence lays sufficient foundation, the jury, rather than the Court, appropriately determines an expert's credibility. *See Bordelon v. Airgas USA, LLC*, 603 F. Supp. 3d 946, 954 (D. Or. 2022). The argument that an expert is not a specialist in a certain field goes to the weight of the evidence, not its admissibility. *See id*.

In his report, Mr. Ulzheimer opines that (1) Experian's reporting was accurate and reasonable; (2) no competent underwriter would interpret the code "87/8" to mean that a foreclosure was completed; and (3) "Plaintiffs' experts have proffered a number of opinions that are factually inaccurate, or are contradicted by the documents produced in this case." (*Id*. at 4–5). Experian mainly argues that Mr. Ulzheimer's experience at Equifax qualifies him to testify as an expert. (Doc. 117 at 4). The Court agrees.

Mr. Ulzheimer preliminarily lays foundation regarding his own knowledge, experience, and training in the credit reporting industry through his expert report. (Doc.107-1 at 2). Importantly, Mr. Ulzheimer can be qualified as an expert based on his experience alone, and the *Daubert* factors do not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *See Hankey*, 203 F.3d at 1169; Fed. R. Evid. 702. Mr. Ulzheimer also states that he is "familiar with general underwriting practices, including what prospective lenders consider when determining credit risk" including "what lenders consider important and not so important when considering a consumer's credit report." (Doc. 107-1 at 2). Mr. Ulzheimer further

states that he gained this knowledge "from many years of working with various lenders during [his] employment with Equifax, Fair Isaac, and Credit.com." (*Id*.) These "many years" of experience are, in fact, three decades of experience working in finance. (*Id*.) From this, the Court finds that Mr. Ulzheimer is qualified under Rule 702. Fed. R. Evid. 702.

Mr. Ulzheimer's anticipated testimony is relevant and reliable. *Daubert*, 509 U.S. at 589. Mr. Ulzheimer states that he has reviewed all the relevant documents in this case. (Doc. 107-1 at 4). He also opines that "the foreclosure was plainly never completed and no competent review of Experian's credit reporting by an underwriter, for example, could ever be interpreted as a completed foreclosure." (Doc. 107-1 at 4). He also states that "Fannie Mae's system does not distinguish between a MOP 8 used for a foreclosure started and a MOP 8 used for a completed foreclosure." (*Id*. at 3–4). Mr. Ulzheimer asserts that these opinions are based on his review of the relevant documents and "based on [his] 31+ years of experience and knowledge gained as a professional in the consumer credit industry." (Doc. 107-1 at 21). Mr. Ulzheimer also states that his opinions are "expressed to a reasonable degree of professional certainty." (*Id*.) From this, the Court finds that Mr. Ulzheimer's opinions meet the criteria set out in Rule 702 as well. *See* Fed. R. Evid. 702(b)–(d).

Finally, while Mr. Ulzheimer has not testified as a mortgage underwriting expert before, the Court does not find that this is fatal to his admissibility as an expert due to his other relevant training and experience. The evidence related to credit reports and how these reports are used by lenders and underwriters is so intertwined that Mr. Ulzheimer's expertise in credit reporting also necessarily bleeds into the area of mortgage underwriting. *See generally Cutter Biological*, 971 F.2d at 385. Mr. Ulzheimer may not be a "specialist" in mortgage underwriting, but in the Ninth Circuit, expert witnesses are not required be specialists in a given field. *Id.* The Court finds that Mr. Ulzheimer is qualified to testify as he has over three decades of experience in the credit reporting industry with relevant experience related to mortgage underwriting. Fed. R. Evid. 702. Plaintiffs argue that,

because Mr. Ulzheimer is less seasoned than their own expert, he should not be allowed to testify about mortgage underwriting at all. (Doc. 107 at 12). This argument bears on credibility, not admissibility, however, which is a duty reserved for the fact-finder. *See Bordelon*, 603 F. Supp. 3d at 954 ("the jury, rather than the Court, appropriately determines an expert's credibility"). Because Plaintiffs' objections go to the weight of the evidence, not its admissibility, the Court will deny Plaintiffs' *Daubert* Motion. *See id.*

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Exclude Portions of Opinion Testimony by John Ulzheimer as Outside the Scope of Rule 702 and *Daubert* (Doc. 107) is **DENIED**.

Dated this 5th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge