**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Cebrynski, et al., | No. CV-21-01965-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Experian Information Solutions Incorporated, | |
| Defendant. | |

Plaintiffs Mark and Kristen Cebrynski ("Plaintiffs") have filed a Motion for Partial Summary Judgment regarding: (1) the accuracy of Experian Information Solutions Incorporated's ("Defendant" or "Experian") reporting; (2) whether Experian used reasonable procedures to assure the accuracy of information it reported; and (3) whether Experian failed to conduct a reasonable reinvestigation of Plaintiff's disputes of an inaccurate foreclosure status. (Doc. 104 at 1). In response, Defendant has filed a Cross-Motion for Summary Judgment regarding these same issues as well as the issue of willfulness.[1] (Doc. 109). These cross-motions are fully briefed.[2] (Docs. 116, 118, 120–121). The parties have also filed unopposed Motions to Seal certain exhibits. (Docs. 105; 110).[3] For the reasons set forth below, the Court denies the Cross-Motions for Summary Judgment, grants Defendant's Motion to Seal, and denies Plaintiff's Motion to Seal as moot.

---

[1] Experian does not move for summary judgment on the issue of whether it used reasonable procedures to ensure maximum accuracy.

[3] Experian filed a Response in support of Plaintiff's Motion to Seal (Doc. 115).

## I. Background[4]

This is a Fair Credit Reporting Act ("FCRA") case. Mr. Cebrynski contracted Covid-19 in 2021 and Plaintiffs sought to refinance their home so that they could use their equity to pay Mr. Cebrynski's medical bills, which totaled $152,000 at that time. (Doc. 1 at ¶¶ 35–37). Plaintiffs sought a cash-out refinance through Barrett Financial Group ("Barrett"), who uses Fannie Mae's automated underwriting software to determine whether a consumer is eligible for a refinance. (*Id*. at ¶ 37). Using this software, Barrett determined that Plaintiffs' loan was ineligible for a refinance because the software found a completed foreclosure previously reported in 2016. (*Id*. at ¶¶ 38–40). Plaintiffs state that a foreclosure never actually occurred on their property but admit that they fell behind on their mortgage in 2016 which caused Wells Fargo Bank ("Wells Fargo") to start foreclosure proceedings on their home. (*Id*. at ¶ 41). Plaintiffs obtained credit reports from Equifax and Trans Union, other Credit Reporting Agencies, which both report that Plaintiffs' account was 120 days late in 2016, but do not report any foreclosure codes on the account. (Doc. 1 at ¶ 43).

Later on, Barrett contacted Credit Information Services Company ("CISCO"), a reseller who provides merged credit reports to mortgage lenders and other businesses for credit decisions, for help fixing this inaccuracy. (*Id*. at ¶¶ 45–46). CISCO directed Plaintiffs to call Wells Fargo about the inaccurate reporting, but Wells Fargo was unable to assist Plaintiffs as the loan had been transferred to another lender. (*Id*. at ¶ 49). Plaintiffs allege that Experian knew that the foreclosure of Plaintiffs loan was started but later terminated yet they still refused to remove the "foreclosure started" code on Plaintiffs' credit report. (*Id*. at ¶¶ 55–58). Plaintiffs state that, due to this inaccuracy, they were unable to refinance their home at the 2.99% interest rate they qualified for in 2021. (*Id*. at ¶ 73).

Due to the above-referenced facts, Plaintiffs brought claims against Wells Fargo and Experian for violations of the FCRA, 15 U.S.C. § 1681i and § 1681e(b) (Doc. 1 at ¶¶ 77–

---

[4] The following facts are undisputed, unless stated otherwise.

109). Plaintiffs also brought a claim against Experian for failing to conduct a required reinvestigation into the disputed information contrary to 15 U.S.C. § 1681i(a)(1)(A). (*Id.* at ¶¶ 110–120). Wells Fargo has since been dismissed from this action. (Doc. 88). Now, Plaintiffs and Experian each seek summary judgment on Plaintiffs' FCRA and reinvestigation claims. (Docs. 104 & 109).

## II.     Discussion

Plaintiffs move for judgment on three issues: (1) that Experian's reporting was inaccurate or so misleading as to be inaccurate; (2) that Experian failed to use reasonable procedures to assure the maximum possible accuracy of information it reported about Plaintiffs; and (3) that Experian failed to conduct a reasonable reinvestigation. (Doc. 104 at 1). Defendant Experian argues that Plaintiffs cannot show that Experian's reporting was inaccurate or that its conduct was unreasonable. (Doc. 116 at 7, 11).

In its Cross-Motion, Experian seeks summary judgment on: (1) the accuracy of its reporting; (2) whether the request by Barrett was a "dispute" under the FCRA, i.e., whether they were required to reinvestigate Plaintiffs' dispute since the dispute was not raised by Plaintiffs themselves; and (3) whether Plaintiffs can establish the element of willfulness. (Doc. 109 at 8, 13, 15). In their Response, Plaintiffs argue that Experian's reporting was not maximally accurate, the dispute they submitted under Section 1681i required a reasonable reinvestigation of dispute, and that Experian's conduct was willful. (Doc. 118 at 9, 12, 14). The Court will address these arguments in turn.

### A.     Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there

is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). As well, trial courts do not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Rather, they draw all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

When the parties submit cross-motions for summary judgment, as they have here, "[e]ach motion must be considered [separately] on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations omitted). The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323). If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).

**B.     The Accuracy of Experian's Reporting**

The parties first dispute the accuracy of Experian's reporting. (Doc. 104 at 1, 12; Doc. 109 at 8). To establish a *prima facie* case under Section 1681e or Section 1681i, Plaintiffs must prove that the information published by Experian was not accurate. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). A consumer

report is "inaccurate" if the report is "patently incorrect or materially misleading." *Id*. at 890-91. "Materially misleading" means that information is reported "in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw v. Experian Info. Sols. Inc*., 891 F.3d 749, 757 (9th Cir. 2018) (citation omitted). Information is only materially misleading when it is "open to an interpretation that is directly contradictory to the true information." *Sanchez v. JPMorgan Chase Bank NA*, 2022 WL 17404796, at *3 (D. Ariz. Dec. 2, 2022) (collecting cases). In evaluating information's accuracy, the Court must view the report as a whole and assess the entire tradeline to determine the accuracy of any piece of information. *See id*.

Experian argues that their reporting code of "87/8" was accurate even though it uses this code to denote both a started foreclosure as well as a completed foreclosure because Wells Fargo did start a foreclosure on Plaintiffs' property. (Doc. 116 at 8). Experian also argues that its code was accurate and not misleading because it is a combined code like the one it used in *Shaw v. Experian*, 891 F.3d 749. (*Id*.) Plaintiffs argue that Experian's reporting code is inaccurate because Fannie May interprets an "8" to mean that a foreclosure was completed. (Doc. 121 at 4). Plaintiffs also argue that Experian's reporting was inaccurate as a matter of law. (Doc. 104 at 12).

A reporting code is accurate as a matter of law when it is not subject to interpretation. *See Shaw*, 891 F.3d at 758. In *Shaw*, the plaintiffs similarly brought FCRA claims against Experian because the plaintiffs had executed short sales on their property and Experian reported these sales as a code combination of "9-68," which Fannie Mae interpreted as a completed foreclosure. *Id*. at 757. On appeal from an Order granting summary judgment in favor of Experian, the Ninth Circuit held that the reported 9-68 code was not "misleading in such a way and to such an extent that it could be expected to adversely affect credit decisions." *Id*. at 757 (internal citation omitted). The court reasoned that "there is no evidence that [a] code combination 9-68 could have represented a foreclosure" because "[w]hen Experian codes foreclosures, it uses a code combination of 8-94, meaning '[c]reditor [g]rantor reclaimed [the] collateral to settle defaulted mortgage.'

And a foreclosure does not occur where a mortgage account is 'legally paid in full for less than the full balance' as occurs with a short sale." *Id*. at 758. The *Shaw* court also stated that "[t]he FCRA does not suggest that Experian should be liable for the misconduct of one of those 15,000 subscribers, even if that subscriber is as well known as Fannie Mae. Nor should Experian necessarily be required to amend its coding to curb a single subscriber's misconduct when all 14,999 other subscribers are apparently accurately reading its manuals." *Id*. at 759.

*Shaw* is distinguishable from the facts of this case. Here, Experian originally reported Plaintiffs' account as "87/8" representing an "Account Condition" of "87" or "Foreclosure proceeding started" and a Payment Status of "8." (Doc. 109-6, ¶ 26). Experian also states that "the single-digit code corresponding with Wells Fargo's reporting for December 2016, an '8,' is followed by 23 months of additional reporting showing each month's payment history and an indication that the mortgage was transferred to another lender and closed in December 2018." (Doc. 109 at 13 (citing Doc. 109-6 at 2-3)). Experian also states that the "8" was not "reported in isolation" as it was "presented in the context of other information about the current and past condition of the account." (*Id*.) Experian admits, however, that this reporting code can "reflect five other events," aside from a foreclosure started "including a [completed] foreclosure." (Doc. 120 at 2).

Viewing the facts separately in the light favorable to each non-moving party, as the Court must, the Court finds that the facts are in such dispute that neither side has shown that they are entitled to judgment on this issue. *Celotex Corp.*, 477 U.S. 322–23. Indeed, Plaintiffs have shown that the reporting code of 8 is misleading as it can reflect six different events—including a completed foreclosure—which is how Fannie May interpreted Plaintiffs' report from Experian. (Doc. 104-13 at 3, 5, 11; Doc. 104-2 at 2–3). However, Defendant has also shown that that code is assisted by other information about the current and past condition of the account. (Doc. 109-6 at ¶¶ 26–30).

Conversely, Experian has shown that the reporting code is a joint reporting code similar to the "9-68" code used in *Shaw*, however, the 87-8 code used here is not as

straightforward as the code in *Shaw*. 891 F.3d 758. Indeed, the 87-8 code can and did represent a completed foreclosure, unlike the 9-68 code which could not represent a foreclosure. *See id*. This evidence precludes a finding that Experian's reporting was inaccurate as a matter of law, but does not show that it is accurate as a matter of law either. Experian's use of reporting code 87-8 does not "affirmatively demonstrate that no reasonable trier of fact could find other than for" Experian, even with the "context" of Plaintiffs' payment history. *Soremekun*, 509 F.3d at 984. Thus, neither party is entitled to summary judgement on the issue of accuracy. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23.

### C. Reasonable Reinvestigation

The parties next dispute whether Experian's reinvestigation duty was triggered when it received a request from CISCO, a reseller under the FCRA. (Doc. 104 at 16 (citing 15 U.S.C. § 1681i(a)(1)(A)). Plaintiffs argue that Experian's reinvestigation was not reasonable. (*Id*. at 16–17). Defendant argues that the express request from CISCO was not a dispute under the FCRA. (Doc. 109 at 13).

Section 1681i(a)(1)(A) outlines the scope of the reinvestigation required by consumer reporting agencies. It states that if the "accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A).

Experian argues that, because CISCO, a third-party reseller, submitted the dispute and not Plaintiffs, its duty to reinvestigate was not triggered. (Doc. 109 at 14 (citing *Warner v. Experian Info. Sols., Inc*., 931 F.3d 917, 921 (9th Cir. 2019)). In Response, Plaintiffs argue that they submitted an "indirect consumer dispute" through CISCO which is acceptable under 15 U.S.C. § 1681i. (Doc. 118 at 12).

In Experian's cited authority, *Warner*, the Ninth Circuit held that "to notify a consumer reporting agency of a dispute 'directly,' a letter must come *from* the consumer

and be sent *to* the agency." *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (emphasis in original) (citations omitted). However, Section 1681i(a)(1)(A) specifically states that if the accuracy of information is disputed "directly, or indirectly through a reseller," the CRA must conduct a reasonable reinvestigation. Section 1681a(u) defines a "reseller" as a CRA that:

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and
>
> (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u)(1–2).

Experian argues that Plaintiffs were still too far removed from Express Requests initiated by their mortgage broker, James Rodriguez, and submitted to Experian through CISCO, a reseller. (Doc. 120 at 6). However, as Plaintiffs point out, the plain language of the FCRA allows for indirect notice through a reseller. *See* Section 1681i(a)(1)(A). As well, *Warner*'s holding that notice must come from the consumer-plaintiffs themselves did not consider the indirect notice part of Section 1681i(a)(1)(A). *See* 931 F.3d at 921. *Warner*'s holding is specifically limited to letters sent by a credit repair organization that the consumer-plaintiff has no part in. *See id*. Here, however, Experian received Express Requests from Plaintiffs' mortgage broker as well as a reseller—an entity specifically allowed to notify CRA's of a dispute.[5] *See* Section 1681i(a)(1)(A). Thus, Experian is not entitled to summary judgement on this issue.

The Court's inquiry does not end here, however, as the Court must still determine whether Experian's reinvestigation was reasonable. To survive Plaintiffs' Motion for Summary Judgment, Experian relies on a declaration submitted by Ms. Teresa Iwanski, a Senior Litigation Analyst for Experian who processes, responds to, and examines requests for reinvestigation. (Doc. 109-6 at ¶¶ 1–2). Ms. Iwanski states that Experian received the

---

[5] Experian does not dispute that CISCO is a reseller for FCRA purposes. (Doc. 109 at 13).

Express Requests submitted on Plaintiffs' behalf and that Experian submitted an "Automated Consumer Dispute Verification" ("ACDV") to Wells Fargo. (*Id*. at ¶ 22). Iwanski also states that Experian was not able to update Plaintiffs' account based on the documents and information provided. (*Id*. at ¶¶ 22–23). Iwanski states that a Wells Fargo agent provided that Plaintiffs' account was part of a foreclosure proceeding that was never completed and that the information was correct on file. (*Id*. at ¶ 23). Due to this, the pending ACDV was terminated, and CISCO was notified that the request was complete. (*Id*.)

Plaintiffs argue that this reinvestigation by Ms. Iwanski was not reasonable, but Plaintiffs do not support this argument with relevant authority to show that Experian's reinvestigation efforts were unreasonable as a matter of law. (*See* Doc. 104 at 16–17). Absent this, Plaintiffs cannot "affirmatively demonstrate that no reasonable trier of fact could find other than for" them. *Soremekun*, 509 F.3d at 984. Thus, neither party is entitled to summary judgement on the reinvestigation issue. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23.

### D.     Reasonable Procedures to Assure Maximum Possible Accuracy

Plaintiffs next argue that Experian did not follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom [a consumer report] relates" as required by Section 1681e(b). (Doc. 104 at 14). Plaintiffs argue that Experian's use of a code that has six possible meanings is not reasonable, nor does it ensure maximum possible accuracy. (*Id*. at 16). Experian argues that Plaintiffs have not shown that its conduct was unreasonable but does not move for summary judgment on this issue itself. (Doc. 116 at 11).

Section 1681e(b) of the FCRA states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Liability under § 1681e(b) is predicated on the reasonableness of the [CRA]'s procedures in obtaining credit information." *Guimond v.*

*Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995).  To make out a *prima facie* violation of section 1681e(b), a consumer must first present evidence tending to show that a CRA prepared a report containing inaccurate information.  *Id*.  A CRA can escape section 1681e(b) liability if it establishes that an inaccurate report was generated despite the fact that it followed reasonable procedures.  *Id*.  "The reasonableness of the procedures and whether the agency followed them [are] jury questions in the overwhelming majority of cases" in the Ninth Circuit.  *Id*.

Plaintiffs essentially ask the Court to impose strict liability upon Experian due to the fact that its reporting code of 8 has six possible meanings—but does not cite any authority to support this proposition. (Doc. 104 at 15–16).  As well, Experian points out that Plaintiffs have not moved for summary judgment on negligence or willfulness, a prerequisite to liability.  *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) ("[A] consumer may succeed on a claim under the FCRA only if he or she shows that the defendant's violation was negligent or willful.").

The Court has already found that genuine issues of material fact on the accuracy of Experian's reporting precluded a finding in favor of either party on that issue.  *See supra*, Section II.B.  This finding is fatal to Plaintiffs' argument.  To make out a *prima facie* violation of Section 1681e(b), Plaintiffs were required to show that Experian's report contained inaccurate information—which they were unable to do.  *Guimond*, 45 F.3d at 1333.  Thus, summary judgement is precluded on this issue as a matter of law.  *See id*; *see also Soremekun*, 509 F.3d at 984.

**E.     Willfulness**

The last issue before the Court is willfulness, which only Experian moves for summary judgement on.  (Doc. 109 at 15).  Experian argues that, even if they did report inaccurate information, Plaintiffs cannot show that Experian acted willfully.  (*Id*.)  In Response, Plaintiffs argue that Experian is liable for the "reckless disregard" of their rights as creditors.  (Doc. 118 at 15).

Indeed, Plaintiffs', who will have the ultimate burden of persuasion at trial, must

show that Experian's violation was negligent or willful to survive summary judgment. *See Marino*, 978 F.3d at 673. Under the FCRA, a plaintiff-consumer may demonstrate willfulness by showing a "reckless disregard of statutory duty." *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1110 (N.D. Cal. 2016) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–60 (2007)). "A defendant acts in reckless disregard if its action 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id*. (citing *Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 711 n. 1 (9th Cir. 2010)). "That is, the defendant must have taken action involving 'an unjustifiably high risk of harm that is either known or so obvious that i[t] should be known.'" *Id*. The statutory requirement of willfulness does not require proof of intent to cause harm, rather, it only requires proof of intent to fail to comply with the FCRA. *See id*. (citations omitted). As well, "[w]illfullness under the FCRA is generally a question of fact for the jury." *Id*. (citations omitted).

To survive summary judgment, Plaintiffs argue that Experian purposely treats "foreclosure" and "foreclosure started" as if they are the same event and that Experian purposefully chooses to use "proprietary account condition[s] and pay history codes (which neither Trans Union nor Equifax use) that could mean a variety of very negative conditions, all of which may be inaccurate." (Doc. 118 at 20). Plaintiffs argue that this shows that Experian intended to fail to comply with the FCRA. (*See id*). Plaintiffs also argue that Experian's failure to conduct a reasonable reinvestigation also shows that Experian's violation of the FCRA was negligent or willful. (*Id*.)

Above, the Court found that neither party was entitled to summary judgement on the reinvestigation issue. *See supra* Section II.C. Having so found, the Court must also find that Experian is not entitled to summary judgment on its willfulness argument.

In the Ninth Circuit, willfulness is generally a question reserved for the fact finder's determination. *See Taylor*, 207 F. Supp. 3d at 1110; *see also Heaton v. Soc. Fin., Inc*., 2015 WL 6744525, at *6 (N.D. Cal. Nov. 4, 2015) ("The mixed nature of the willfulness

inquiry—with issues of law and fact intertwined—is the precise reason the question is best reserved for a finder of fact."). Indeed, to find for Experian here, the Court would necessarily have to make credibility determinations or weigh conflicting evidence—which is improper for the Court to do at this juncture. *See T.W. Electric Service, Inc*, 809 F.2d 626, 630-31. At a minimum, Experian's use of a reporting code that is subject to interpretation six different ways, including a completed foreclosure, creates a genuine issue of material fact regarding the issue of willfulness. *Cf. Shaw*, 891 F.3d at 758 (holding that Experian's code combination was not misleading where there was no evidence that the code combination could have represented a foreclosure). Thus, summary judgment is precluded here. *Soremekun*, 509 F.3d at 984.

**III.    The Motions to Seal**

The parties filed unopposed Motions to Seal certain exhibits included in their Cross-Motions (Docs. 105; 110). The Court will grant Defendant's Motion to Seal "Exhibit 1-X" (Doc. 110) because public disclosure of the confidential information contained in this exhibit may compromise Defendant's trade secrets, threaten Defendant's credit reporting system, or risk the misuse of Defendant's confidential information by competitors or criminals. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) ("'reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might . . . become a vehicle for improper purposes.'") (internal citations omitted); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) ("What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'") (quoting *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 598 (1978)). The Court also notes that Defendant did not redact Mr. Cebrynski's social security number in the exhibit which it filed with its Motion (Doc. 109-5). Accordingly, the Court will also direct the Clerk to file that exhibit under seal.

As for Plaintiffs' Motion to Seal, the Court notes that Plaintiffs did not lodge these documents for the Court's review, as required by LRCiv 5.6(c), but instead filed blank placeholders. (Doc. 106). Defendants filed a Response to the Motion to Seal articulating

why the exhibits meet the compelling reasons standard for sealing, but also did not lodge a copy of the exhibits under seal. (Doc. 115). Because of this, the Court was unable to assess whether the contents of those exhibits should in fact be sealed. The Court's ruling on the pending motions for summary judgment were thus made without reference to or reliance upon those exhibits. Thus, the Court will deny Plaintiffs' Motion to Seal Exhibits 10, 11, 14, 16 and 18 (Doc. 105) as moot.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 104) and Experian's Motion for Summary Judgment (Doc. 109) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal (Doc. 110) is **GRANTED**, but Plaintiffs' Motion to Seal (Doc. 105) is **DENIED** as **moot**. The Clerk is kindly directed to file under seal the exhibit currently lodged at Doc. 111 and well as the exhibit filed as Doc. 109-5.

**IT IS FINALLY ORDERED** that in light of Plaintiffs' remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 27 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 6th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge