WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Cebrynski, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>Experian Information Solutions Incorporated,<br><br>            Defendants. | No. CV-21-01965-PHX-DJH<br><br>**ORDER** |

    Defendant Experian Information Solutions Incorporated ("Defendant" or "Experian") has filed a Motion for Reconsideration of the Court's Order denying summary judgment on various issues. (Doc. 127). The Court allowed Plaintiffs Mark and Kristen Cebrynski ("Plaintiffs") to file a Response (Doc. 128), to which they have done. (Doc. 129). After consideration of the parties' briefing, the Court declines to change its decision and denies Defendant's Motion.

**I.    Background**

    Plaintiffs sued Defendant when their attempt to refinance their home was blocked because a "completed foreclosure" was shown on their credit report. (Doc. 123 at 2). It is undisputed that a foreclosure never actually occurred, but that Plaintiffs fell behind on their mortgage in 2016 which caused Wells Fargo Bank ("Wells Fargo") to start foreclosure proceedings on their home. (*Id.*) Plaintiffs obtained credit reports from Equifax and Trans Union, other Credit Reporting Agencies, which both report that Plaintiffs' account was 120 days late in 2016, but do not report any foreclosure codes on the account. (Doc. 1 at ¶ 43).

Plaintiffs allege that Experian knew that the foreclosure of Plaintiffs loan was started but later terminated yet they still refused to remove the "foreclosure started" code on Plaintiffs' credit report. (*Id*. at ¶¶ 55–58). Plaintiffs state that, due to this inaccuracy, they were unable to refinance their home at the 2.99% interest rate they qualified for in 2021. (*Id*. at ¶ 73). Due to the above-referenced facts, Plaintiffs brought claims against Wells Fargo and Experian for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681i and § 1681e(b). (*Id*. at ¶¶ 77– 109). Plaintiffs also brought a claim against Experian for failing to conduct a required reinvestigation into the disputed information contrary to 15 U.S.C. § 1681i(a)(1)(A). (*Id*. at ¶¶ 110–120). Wells Fargo has since been dismissed from this action. (Doc. 88).

The parties both moved for summary judgement on substantially similar issues. (Docs. 104 & 109). Relevant to this Order, the parties disputed whether Defendant's reporting of Plaintiffs' credit was accurate. (Doc. 123 at 4). Defendant also argued that, even if it did report inaccurate information, Plaintiffs could not show that it acted willfully. (*Id*. at 10). Plaintiffs did not move for summary judgment on the willfulness issue. (*Id*.)

The Court issued an Order on these Motions on March 6, 2023 ("the March Order"). (Doc. 123). The Court found, in pertinent part, that (1) neither party was entitled to summary judgement on the issue of accuracy because Experian's use of reporting code "87-8" did not "affirmatively demonstrate that no reasonable trier of fact could find other than for" Experian, even with the "context" of Plaintiffs' payment history; and (2) that Defendant was not entitled to summary judgment on the issue of willfulness. (*Id*. at 6–7, 12 (citing *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007)). Now, Defendant asks the Court to reconsider these findings. (Doc. 127).

**II.  Legal Standard**

Motions for reconsideration should be granted only in rare circumstances. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in

controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Indeed, Arizona Local Rule of Civil Procedure 7.2 ("LRCiv 7.2") provides that "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). The movant must specify "[a]ny new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier." *Id*. This is because "[m]otions for [r]econsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

A motion for reconsideration should not be used for the purpose of asking a court "to rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

**III.     Discussion**

Defendant argues that (1) the Court erred by finding that Defendant's reporting "was inaccurate or misleading;" and (2) that the Court failed to apply the "objective test for willfulness." (Doc. 123 at 3, 11). The Court will address each argument in turn.

**A.     The Accuracy of Experian's Reporting**

Defendant argues that its 2021 reporting was not inaccurate or misleading and that the relevant reporting code it has used is a singular 8, not an 87-8.[1] (Doc. 127 at 1, 7). Defendant essentially argues that the Court committed clear error by finding that neither party was entitled to summary judgement on the issue of accuracy. (*Id*. at 3–4). The Court

---

[1] Experian states that a reporting cod of "8" is "the grid code for 'foreclosure proceeding started'" but can "reflect five other events, including a foreclosure." (Doc. 120 at 2). A reporting code of 87-8 "represents an account condition of '87' ('Foreclosure proceeding started') and a payment status of '8.'" (*Id*. at 3).

disagrees.

First, Defendant's argument related to accuracy misconstrues the Court's March Order. (Doc. 123). The Court never found that the code was accurate or inaccurate in the March Order. Instead, the Court found that:

> Plaintiffs have shown that the reporting code of 8 is misleading as it can reflect six different events—including a completed foreclosure—which is how Fannie May interpreted Plaintiffs' report from Experian. However, Defendant has also shown that that code is assisted by other information about the current and past condition of the account.

(*Id*. at 6). The Court specifically stated that the evidence "precludes a finding that Experian's reporting was inaccurate as a matter of law, but does not show that it is accurate as a matter of law either." (*Id*. at 7). Thus, Defendant cannot show clear or manifest error as to the Court's finding on accuracy. *See Sch. Dist. No. 1J, Multnomah Cnty., Or.*, 5 F.3d at 1263.

Moreover, though Defendant is correct that the Court erroneously stated that Defendant used the 87-8 code instead of the 8 code in 2021, this error had no effect on the Court's ultimately conclusion (and may have helped rather than hurt Defendant). The Court's prior Order reviewed *Shaw v. Experian*, 891 F.3d 749 (9th Cir. 2018), the binding case law cited by Defendant. *Shaw* dictates that a reporting code is accurate as a matter of law when it is not subject to interpretation. *See id.* at 758. In *Shaw*, the plaintiffs similarly brought FCRA claims against Experian because the plaintiffs had executed short sales on their property and Experian reported these sales as a code combination of "9-68," which Fannie Mae interpreted as a completed foreclosure. *Id*. at 757. On appeal from an order granting summary judgment in favor of Experian, the Ninth Circuit held that the reported 9-68 code was not "misleading in such a way and to such an extent that it could be expected to adversely affect credit decisions." *Id*. at 757 (internal citation omitted). The court reasoned that "there is no evidence that [a] code combination 9-68 could have represented a foreclosure" because "[w]hen Experian codes foreclosures, it uses a code combination of 8-94, meaning '[c]reditor [g]rantor reclaimed [the] collateral to settle defaulted mortgage.'

And a foreclosure does not occur where a mortgage account is 'legally paid in full for less than the full balance' as occurs with a short sale." *Id*. at 758. The *Shaw* court also stated that "[t]he FCRA does not suggest that Experian should be liable for the misconduct of one of those 15,000 subscribers, even if that subscriber is as well known as Fannie Mae." *Id*. at 759.

The Court found *Shaw* distinguishable because "Experian originally reported Plaintiffs' account as '87/8' representing an 'Account Condition' of '87' or 'Foreclosure proceeding started' and a Payment Status of '8.'" (Doc. 123 at 6). The Court also noted that Defendant stated in its Reply motion that the reporting code of a lone "8" in the payment history grid, which is the grid code for "foreclosure proceeding started," can "'reflect five other events,' aside from a foreclosure started 'including a [completed] foreclosure.'" (*Id*.) Based on this, the Court found that Plaintiffs had shown that the reporting code of 8 may be misleading—but not as a matter of law because that code is assisted by other information—just as Defendant argued. (*Id*.) The Court may have conflated the codes used in 2016 and 2021, but this does not entitle Defendant to relief under *Shaw*.

A key part of *Shaw* drove the Court's analysis on this point: that "there [was] no evidence that [a] code **combination** [of] 9-68 could have represented a foreclosure." (*Id*. (citing *Shaw*, 891 F.3d at 758)) (emphasis added). Now, Defendant argues that only the lone code of 8 used in 2021 is relevant to the Court's inquiry. (Doc. 127 at 1). *Shaw's* holding was based on a joint code combination that could not have represented a foreclosure at all. *Shaw*, 891 F.3d at 758. Here, however, the singular reporting code of 8 could represent six different events—including the start of foreclosure proceedings. (Docs. 123 at 6; 120 at 2). Based on these facts, *Shaw* is distinguishable because of the difference in what these codes can mean. *Shaw*, 891 F.3d at 758. Thus, from the above, Defendant has not shown that the Court erred or that it is entitled to reconsideration. *Sch. Dist. No. 1J, Multnomah Cnty., Or.*, 5 F.3d at 1263.

### B. Willfulness

Defendant next argues that the Court "failed" to apply the "objective test for willfulness." (Doc. 127 at 11). The Court disagrees. The Court's Order correctly identified and applied the standard by which a court assesses a willful violation of the FCRA:

> Plaintiffs', who will have the ultimate burden of persuasion at trial, must show that Experian's violation was negligent or willful to survive summary judgment. *See Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). Under the FCRA, a plaintiff-consumer may demonstrate willfulness by showing a "reckless disregard of statutory duty." *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1110 (N.D. Cal. 2016) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–60 (2007)). "A defendant acts in reckless disregard if its action 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id*. (citing *Bateman v. Am. MultiCinema, Inc*., 623 F.3d 708, 711 n. 1 (9th Cir. 2010)). "That is, the defendant must have taken action involving 'an unjustifiably high risk of harm that is either known or so obvious that i[t] should be known.'" *Id*. The statutory requirement of willfulness does not require proof of intent to cause harm, rather, it only requires proof of intent to fail to comply with the FCRA. *See id*. (citations omitted). As well, "[w]illfullness under the FCRA is generally a question of fact for the jury." *Id*. (citations omitted).

(Doc. 123 at 10–11). Utilizing these standards, the Court found that Experian was not entitled to summary judgment on its willfulness argument because it failed to establish entitlement to summary judgement on the issue of whether Experian was required to conduct a reasonable reinvestigation. (Doc. 123 at 11).

CISCO, a reseller under the FCRA, submitted an "indirect consumer dispute" under 15 U.S.C. § 1681i to ask Experian to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. (*Id*. at 7). Experian refused to conduct a reinvestigation, even though the plain language of the FCRA allows for resellers to request a reinvestigation. (*Id*.) The Court relied on this evidence to determine that Plaintiff had demonstrated a genuine issue of material fact as to willfulness by showing a "reckless disregard of statutory duty." (*Id*. at 11); *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1110 (N.D. Cal. 2016). Thus, the Court correctly identified

and applied the applicable standards by which a court assesses a willful violation of the FCRA at the summary judgment stage. (*Id.* at 10–12). The Court also found that "[a]t a minimum, Experian's use of a reporting code that is subject to interpretation six different ways, including a completed foreclosure, creates a genuine issue of material fact regarding the issue of willfulness." (*Id.* at 12).

Experian, of course, denies that it engaged in these practices knowing that they may fail to comply with the FCRA. But as the Court stated in its Order, "to find for Experian here, the Court would necessarily have to make credibility determinations or weigh conflicting evidence—which is improper for the Court to do at this juncture." (Doc. 123 at 12 (citing *T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987)). That is because, to show an "unjustifiably high risk of harm that is either known or so obvious that it should be known" would have required this weighing of evidence and credibility. *See Safeco*, 551 U.S. at 71.

Moreover, as the Court stated before, in the Ninth Circuit, willfulness is generally a question reserved for the fact finder's determination. *See Heaton v. Soc. Fin., Inc.*, 2015 WL 6744525, at *6 (N.D. Cal. Nov. 4, 2015) ("The mixed nature of the willfulness inquiry—with issues of law and fact intertwined—is the precise reason the question is best reserved for a finder of fact."). In sum, the Court did not commit clear error in applying the required objective assessment of willfulness in the context of the parties' motions for summary judgment. Defendants' desire to seek a second bite at the apple on this issue is an insufficient basis for reconsideration. *See Leong*, 689 F. Supp. at 1573.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Reconsideration (Doc. 127) is **DENIED**.

Dated this 11th day of June, 2024.

Honorable Diane J. Humetewa
United States District Judge